IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TATENDA NYANHONGO, on behalf of herself and others similarly situated,<br><br>    *Plaintiff,*<br><br> v.<br><br>CREDIT COLLECTION SERVICES,<br><br>    *Defendant.* | CIVIL ACTION<br>NO. 20-6380 |

**PAPPERT, J.**                              **April 20, 2021**

**MEMORANDUM**

Credit Collection Services sent Tatenda Nyanhongo a debt collection letter in March of 2020. Nyanhongo sued CCS individually and on behalf of others similarly situated alleging it violated the Fair Debt Collection Practices Act by mailing the collection letter with prohibited information on the envelope. CCS moves to dismiss the Complaint for lack of Article III standing and for failure to state a claim. The Court grants the Motion because Nyanhongo fails to establish standing.

I

A

The facts supporting Nyanhongo's Complaint are straightforward. CCS mailed her a debt collection letter on March 4, 2020. (Compl. ¶ 6, ECF 1.) The outside of the envelope displayed the phrase "PERSONAL & CONFIDENTIAL" and "data symbols similar to a QR code"[1] were visible through the envelope's glassine window. (*Id.* at

---

[1] A "quick response" or "QR" code is a code that reveals information when scanned by a device such as a smart phone. *See St. Pierre v. Retrieval-Masters Creditors Bureau*, 898 F.3d 351, 355 n.4 (3d Cir. 2018).

1

¶¶ 9–10.) Nyanhongo, who intends to represent a class, claims CCS has sent collection letters in similar envelopes to hundreds of Pennsylvanians. (*Id.* at ¶ 15.) She contends that including this information on the envelope violates § 1692f(8) of the FDCPA, which provides that a debt collector may not use "*any language or symbol*, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business." 15 U.S.C. § 1692f(8) (emphasis added). Nyanhongo does not allege the markings on the envelope revealed any personal or private information about her.

## B

CCS moves to dismiss Nyanhongo's Complaint for lack of standing and for failure to state a claim. (Mot. to Dism. 3, ECF 5.) It argues she fails to plead facts establishing a concrete injury supporting Article III standing. (*Id.* at 16–21.) CCS contends Nyanhongo pleads nothing more than a violation of the statute—she does not claim to have suffered an invasion of privacy, financial harm or any other injury. (*Id.* at 20–21.) Alternatively, it argues that she fails to state a claim for relief because even if including the text and symbol on the envelope runs afoul of § 1692f(8), they "are benign such that their presence does not constitute an unfair practice and, certainly not, an unconscionable one." (*Id.* at 3, 8–16.)

Nyanhongo responds that violations of § 1692f(8), on their own, confer Article III standing. (Resp. to Mot. 9–10, ECF 7.) And she argues that she pleads a claim for relief under the FDCPA because she alleges CCS violated the plain language of the

statute and the Third Circuit does not recognize a "benign language" exception to § 1692f(8). *See* (*id.* at 19).

II

Article III of the Constitution limits the exercise of judicial power to cases and controversies. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013); *see also Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) ("Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed."). The case-or-controversy requirement demands that plaintiffs "establish that they have standing to sue." *Clapper*, 568 U.S. at 408 (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).

To demonstrate Article III standing, a plaintiff must establish: (1) she suffered injury-in-fact; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to speculative, that a favorable decision will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "Where, as here, a case is at the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560); *see also Bognet v. Sec'y Commw. of Pa.*, 980 F.3d 336, 348 (3d Cir. 2020) (explaining a plaintiff

3

"must be injured . . . in a way that concretely impacts [her] own protected legal interests").

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of standing because "[s]tanding is a jurisdictional matter." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). Generally, Rule 12(b)(1) motions fall into two categories: facial attacks and factual attacks. *Id*. "[A] facial attack 'contests the sufficiency of the pleadings,' . . . 'whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with jurisdictional prerequisites." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (quoting *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012); *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008)). In evaluating a facial attack, a court must "apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6)," *Aichele*, 757 F.3d at 358, and consider "only . . . the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff," *In re Schering Plough Corp.*, 678 F.3d at 243 (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). In evaluating a factual attack, a court "may weigh and 'consider evidence outside the pleadings.'" *Aichele*, 757 F.3d at 358 (quoting *Gould Elecs. Inc.*, 220 F.3d at 176).

### III

### A

The FDCPA is "geared towards eliminating abusive practices by debt collectors." *St. Pierre v. Retrieval-Masters Creditors Bureau*, 898 F.3d 351, 358 (3d Cir. 2018). In an effort to eliminate "unfair or unconscionable means" of collecting or attempting to

collect debts, 15 U.S.C § 1692f, the Act prohibits the use of "any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails," *id.* § 1692f(8).  This prohibition is meant to prevent debt collectors from revealing private information about a debtor or her status as such to the public.  *See Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014).

CCS's Motion is a facial attack on Nyanhongo's Article III standing because it precedes any answer or other presentation of competing facts.  *See Aichele*, 757 F.3d at 358.  Accordingly, the Court must construe the facts alleged in the Complaint, sparse as they may be, in the light most favorable to Nyanhongo.  *See id.*  The question here is whether Nyanhongo clearly alleges facts demonstrating that she suffered a concrete injury when CCS mailed her a debt collection letter in an envelope displaying the phrase "PERSONAL & CONFIDENTIAL" and other "data symbols."  *See Spokeo*, 136 S. Ct. at 1547.

Nyanhongo's alleged injury is intangible.  Although "tangible injuries are typically easier to identify, 'intangible injuries can nevertheless be concrete.'"  *DiNaples v. MRS BPO, LLC*, 934 F.3d 275, 279 (3d Cir. 2019) (quoting *Spokeo*, 136 S. Ct. at 1549).  "[B]oth history and the judgment of Congress play important roles" in determining the concreteness of an intangible injury.  *Spokeo*, 136 S. Ct. at 1549.  When considering history, courts ask "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."  *Id.*  "If so, it is likely to satisfy the injury-in-fact element of standing."  *St. Pierre*, 898 F.3d at 357.  Congress's judgment is also an important consideration.  *Spokeo*, 136 S. Ct. at 1549.  But "just because a plaintiff

asserts a congressionally created cause of action does not necessarily mean that the plaintiff has suffered a concrete injury." *DiNaples*, 934 F.3d at 279. "A 'bare procedural violation' will not meet the concreteness requirement." *Id.* (quoting *Spokeo*, 136 S. Ct. at 1549).

Twice in recent years, the Third Circuit has considered whether a plaintiff alleging a violation of § 1692f(8) pled a concrete injury within this framework. First, in *St. Pierre v. Retrieval-Masters Creditors Bureau*, the Third Circuit held that a debtor pled a concrete injury when he alleged a debt collector sent him a collection letter in an envelope displaying his account number. 898 F.3d at 358. The Court relied on its conclusion in *Douglass v. Convergent Outsourcing* that displaying a consumer's account number on an envelope "implicates a core concern animating the FDCPA—the invasion of privacy." 765 F.3d at 303. Plus, the invasion of privacy "is closely related to harm that has traditionally been regarded as providing a basis for a lawsuit in English and American courts." *St. Pierre*, 898 F.3d at 358. So the plaintiff in *St. Pierre* sufficiently alleged a concrete injury.

Building on *Douglass* and *St. Pierre*, the Court held in *DiNaples v. MRS BPO, LLC*, that the plaintiff pled a concrete injury by alleging he received a letter from a debt collector in an envelope bearing a QR code that, when scanned, revealed his account number. 934 F.3d at 280. The Court concluded:

> Disclosure of the debtor's account number through a QR code, which anyone could easily scan and read, still "implicates core privacy concerns." [*St. Pierre*, 898 F.3d] at 304. The debt collector has "displayed core information relating to the debt collection" that is "susceptible to privacy intrusions." *Id.* at 305. Whether disclosed directly on the envelope or less directly through a QR code, the protected information has been made accessible to the public. And as we concluded in *St. Pierre*, such an invasion of privacy "is closely related to harm that has traditionally been regarded as providing

> a basis for a lawsuit in English and American courts." 898 F.3d at 357–58. It thus follows from our *Douglass* and *St. Pierre* decisions that DiNaples has suffered a sufficiently concrete harm.

*Id.* The Third Circuit rejected the notion that a plaintiff must allege that "someone actually intercepted her mail, scanned the barcode, read the unlabeled string of numbers and determined the contents related to debt collection—or it was imminent someone might do so." *Id.* Instead, it held plaintiff could establish a concrete injury by showing "she received an envelope with a QR code containing private information." *Id.*

Nyanhongo does not plead a concrete injury. She alleges only that CCS mailed her a collection letter in an envelope displaying "data symbols" and a generic phrase that may or may not be unique to debt collection mailings.[2] (Compl. ¶¶ 9–10.) Unlike in *DiNaples*, she says nothing about what, if any, information the data symbols reveal or what injury that revelation caused. *See DiNaples*, 934 F.3d at 280; *but see Palmer v. Credit Collection Servs., Inc.*, 160 F. Supp. 3d 819, 823 (E.D. Pa. 2015) (ignoring standing and holding bar codes of any kind on an envelope violate § 1692f(8)). And contrary to the plaintiff's complaint in *St. Pierre* alleging the defendant sent a debt collection letter in an envelope bearing a QR code and plaintiff's account number, Nyanhongo's alleges only that the envelope displayed "data symbols" and the phrase "PRIVATE & CONFIDENTIAL." 898 F.3d at 355.[3] In short, Nyanhongo fails to

---

[2] Nyanhongo argues in her Response to CCS's Motion that "no other documents, other than collection attempts are marked [PERSONAL & CONFIDENTIAL]." (Resp. to Mot. 7 n.1.) She does not allege this fact in her Complaint so the Court cannot consider it now. *Hammond v. City of Philadelphia*, No. 00-cv-5082, 2001 WL 823637, at *2 (E.D. Pa. June 29, 2001) ("A party may not rely on new facts in submissions in response to a motion to dismiss to defeat the motion.").

[3] The *St. Pierre* Court—relying on *Douglass*'s conclusion that revealing a debtor's account number implicates core privacy concerns—declined to "reach the question whether exposure of the 'quick response' code on the envelope, without more, would be sufficient to confer standing under the FDCPA." *Id.* at 357 n.6 (citing *Douglass*, 765 F.3d at 301 n.4).

7

establish standing because she does not clearly allege facts explaining how the information on the envelope conveyed "private information," *DiNaples*, 934 F.3d at 280, "implicate[d] core privacy concerns," *St. Pierre*, 898 F.3d at 304, or otherwise caused a concrete injury, *see Sussino v. Work Out World, Inc.*, 862 F.3d 346, 351–52 (3d Cir. 2017) (plaintiff pled intangible concrete injury by alleging a single violation of the Telephone Consumer Protection Act caused nuisance and invasion of privacy—the "very harm that Congress sought to prevent"). As written, her Complaint alleges only a "bare procedural violation" of § 1692f(8). *Spokeo*, 136 S. Ct. at 1549.

      This holding is consistent with other recent decisions in this Circuit. For example, in *McRobie v. Credit Prot. Ass'n*, our Court held that including a "client number" on the exterior of a mailer constituted a concrete injury because "the number has the potential to 'implicate[ ] a core concern animating the FDCPA—the invasion of privacy,' because it displays 'information relating to the debt collection' that is 'susceptible to privacy intrusions.'" No. 18-cv-00566, 2020 WL 1181974, at *9 (E.D. Pa. Mar. 11, 2020) (quoting *Douglass*, 765 F.3d at 303); *see also Estate of Caruso v. Financial Recoveries*, No. 15-cv-7936, 2017 WL 2704088, at *6 (D.N.J. June 22, 2017) (allegation that envelope displayed symbol containing personal information through glassine window likely enough to establish standing); *Stever v. Harrison*, No. 16-cv-298, 2017 WL 2869505, at *6–7 (D.N.J. July 5, 2017) (plaintiff established concrete, particularized injury by alleging debt collector sent envelope with bar code that, when scanned, revealed personal information).

The Court lacks jurisdiction because Nyanhongo fails to plead facts establishing Article III standing. Accordingly, the Court dismisses the Complaint without prejudice. *See Thorne v. Pep Boys Manny Moe & Jack, Inc.*, 980 F.3d 879, 896 (3d Cir. 2020).

An appropriate Order follows.

BY THE COURT:

 */s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.
